# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 11-477V

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| CASEY COMPTON *and* | \* |
| JEFFREY COMPTON, *as Parents/Next* | \* |
| *Friends and Legal Representatives of* | \*   Filed:  October 6, 2015 |
| A.C., *their minor daughter,* | \* |
| | \* |
| Petitioners, | \*   Decision by Stipulation; Damages; |
| | \*   Diphtheria-Tetanus-Acellular Pertussis |
| v. | \*   ("DTaP") Vaccine; hepatitis B ("Hep B") |
| | \*   Vaccine; Inactive Polio ("IPV") Vaccine; |
| SECRETARY OF HEALTH AND | \*   Haemophilus Influenza ("Hib") Vaccine; |
| HUMAN SERVICES, | \*   Pneumococcal Conjugate ("PCV") Vaccine; |
| | \*   Transverse Myelitis ("TM") |
| Respondent. | \* |
| | \* |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Ronald W. Cox*, McCarthy Wilson, Rockville, MD, for Petitioner.

*Jennifer L. Reynaud*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## DECISION AWARDING DAMAGES[1]

On July 22, 2011, Casey and Jeffrey Compton filed a petition, as parents/next friends and legal representatives of A.C., their minor daughter, seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program").[2] Petitioners allege that the diphtheria-tetanus-acellular pertussis ("DTaP"), hepatitis B ("Hep B"), inactivated polio (IPV"), haemophilus influenza ("Hib"), and pneumococcal conjugate ("PCV") vaccinations that A.C. received on July 25, 2008, caused her to develop transverse myelitis ("TM"). Petitioners further allege that A.C. experienced the residual effects of the injury for more than six months.

---

[1] Because this decision contains a reasoned explanation for my actions in this case, I will post it on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (Dec. 17, 2002) (current version at 44 U.S.C. § 3501 (2014)). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the published decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public. *Id*.

[2] The National Vaccine Injury Compensation Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. § 300aa-10 through 34 (2012)).

Respondent denies that A.C.'s alleged injury and residual effects were caused-in-fact by the DTaP, Hep B, IPV, Hib, or PCV vaccines. Respondent further denies that any of these vaccines, either alone or in combination, caused A.C. any other injury or her current condition. Nonetheless both parties, while maintaining their above-stated positions, agreed in a stipulation (filed October 1, 2015) that the issues before them could be settled, and that a decision should be entered awarding Petitioners compensation.

I have reviewed the file, and based upon that review, I conclude that the parties' stipulation (as attached hereto) is reasonable. I therefore adopt it as my decision in awarding damages on the terms set forth therein.

The stipulation awards:

- A lump sum of $351,671.00, which amount represents compensation for first year life care expenses ($51,671.00), and combined lost future earnings and pain and suffering ($300,000.00), in the form of a check payable to Petitioners as guardian(s)/conservator(s) of the estate of A.C. for the benefit of A.C. No payment shall be made until Petitioners provide Respondent with documentation establishing that they have been appointed as the guardian(s)/conservator(s) of A.C.'s estate; and

- An amount sufficient to purchase the annuity contracted described in the attached stipulation, paid to the insurance company from which the annuity will be purchased.

Stipulation ¶ 8. These amounts represents compensation for all damages that would be available under Section 15(a) of the Act.

I approve a Vaccine Program award in the requested amounts set forth above to be made to Petitioner. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[3]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[3] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by each filing (either jointly or separately) a notice renouncing their right to seek review.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
OFFICE OF SPECIAL MASTERS

CASEY and JEFFREY COMPTON, as
Parents/Next Friends and Legal
Representatives of A.C., their minor daughter,

Petitioners,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

Respondent.

No. 11-477V
Special Master Corcoran
ECF

## STIPULATION

The parties hereby stipulate to the following matters:

1. On behalf of their minor child, A.C., Casey and Jeffrey Compton ("petitioners") filed a petition for vaccine compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10 to 34 (the "Vaccine Program"). The petition seeks compensation for injuries allegedly related to A.C.'s receipt of diphtheria-tetanus-acellular pertussis ("DTaP"), hepatitis B ("Hep B"), inactivated polio ("IPV"), haemophilus influenzae ("Hib") and pneumococcal conjugate ("PCV") vaccines, which vaccines are contained in the Vaccine Injury Table (the "Table"), 42 C.F.R. § 100.3 (a).

2. A.C. received her immunizations on July 25, 2008.

3. The vaccines were administered within the United States.

4. Petitioners allege that A.C. sustained a vaccine-related injury diagnosed as transverse myelitis that was caused-in-fact by the DTaP, Hep B, IPV, Hib, and PCV vaccines. Petitioners further allege that A.C. experienced the residual effects of the injury for more than six months.

5. Petitioners represent that there has been no prior award or settlement of a civil action for damages on behalf of A.C. as a result of her condition.

6. Respondent denies that A.C.'s alleged injury and residual effects were caused-in-fact by the DTaP, Hep B, IPV, Hib, or PCV vaccines. Respondent further denies that any of these vaccines, either alone or in combination, caused A.C. any other injury or her current condition.

7. Maintaining their above-stated positions, the parties nevertheless now agree that the issues between them shall be settled and that a decision should be entered awarding the compensation described in paragraph 8 of this Stipulation.

8. As soon as practicable after an entry of judgment reflecting a decision consistent with the terms of this Stipulation, and after petitioners have filed an election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), the Secretary of Health and Human Services will issue the following vaccine compensation payments:

> a. A lump sum of $351,671.00, which amount represents compensation for first year life care expenses ($51,671.00), and combined lost future earnings and pain and suffering ($300,000.00), in the form of a check payable to petitioners as guardian(s)/conservator(s) of the estate of A.C. for the benefit of A.C. No payments shall be made until petitioners provide respondent with documentation establishing that they have been appointed as the guardian(s)/conservator(s) of A.C.'s estate; and
>
> b. An amount sufficient to purchase the annuity contract described in paragraph 10 below, paid to the life insurance company from which the annuity will be purchased (the "Life Insurance Company").

9. The Life Insurance Company must have a minimum of $250,000,000.00 capital and surplus, exclusive of any mandatory security valuation reserve. The Life Insurance Company must have one of the following ratings from two of the following rating organizations:

2

a. A.M. Best Company: A++, A+, A+g, A+p, A+r, or A+s;

b. Moody's Investor Service Claims Paying Rating: Aa3, Aa2, Aa1, or Aaa;

c. Standard and Poor's Corporation Insurer Claims-Paying Ability Rating: AA-, AA, AA+, or AAA;

d. Fitch Credit Rating Company, Insurance Company Claims Paying Ability Rating: AA-, AA, AA+, or AAA.

10. The Secretary of Health and Human Services agrees to purchase an annuity contract from the Life Insurance Company for the benefit of A.C., pursuant to which the Life Insurance Company will agree to make payments periodically to petitioners, as the court- appointed guardian(s)/conservator(s) of the estate of A.C. for the following items of compensation:

a. For future unreimbursable AETNA Insurance Maximum out of Pocket expenses, beginning on the first anniversary of the date of judgment, an annual amount of $4,000.00 to be paid up to the anniversary of the date of judgment in year 2033, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

b. For future unreimbursable ACA Maximum out of Pocket expenses, beginning on the anniversary of the date of judgment in year 2033, an annual amount of $3,750.00 to be paid up to the anniversary of the date of judgment in year 2051, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

c. For future unreimbursable ACA Premium expenses, beginning on the anniversary of the date of judgment in year 2033, an annual amount of $3,423.00 to be paid up to the anniversary of the date of judgment in year 2034. Then, beginning on the anniversary of the date of judgment in year 2034, an annual amount of $3,503.28 to be paid up to the anniversary of the date of judgment in year 2035. Then, beginning on the anniversary of the date of judgment in year 2035, an annual amount of $3,633.60 to be paid up to the anniversary of the date of judgment in year 2036. Then, beginning on the anniversary of the date of judgment in year 2036, an annual amount of $3,740.64 to be paid up to the anniversary of the date of judgment in year 2037. Then, beginning on the anniversary of the date of judgment in year 2037, an annual amount of $3,794.04 to be paid up to the anniversary of the date of judgment in year 2038. Then, beginning on the anniversary of the date of judgment in year 2038, an annual amount of $3,874.32 to be paid up to the anniversary of the date of judgment in year 2039. Then, beginning on the anniversary of the date of judgment in year 2039, an annual amount of $3,954.48 to be paid up to the anniversary of the date of judgment in year 2040. Then, beginning on the anniversary of the date of judgment in year 2040, an annual amount of $4,004.64 to be paid up to the anniversary of the date of judgment in year 2041. Then, beginning on the anniversary of

the date of judgment in year 2041, an annual amount of $4,058.16 to be paid up to the anniversary of the date of judgment in year 2042. Then, beginning on the anniversary of the date of judgment in year 2042, an annual amount of $4,084.92 to be paid up to the anniversary of the date of judgment in year 2043. Then, beginning on the anniversary of the date of judgment in year 2043, an annual amount of $4,111.68 to be paid up to the anniversary of the date of judgment in year 2044. Then, beginning on the anniversary of the date of judgment in year 2044, an annual amount of $4,138.32 to be paid up to the anniversary of the date of judgment in year 2045. Then, beginning on the anniversary of the date of judgment in year 2045, an annual amount of $4,165.08 to be paid up to the anniversary of the date of judgment in year 2046. Then, beginning on the anniversary of the date of judgment in year 2046, an annual amount of $4,218.60 to be paid up to the anniversary of the date of judgment in year 2047. Then, beginning on the anniversary of the date of judgment in year 2047, an annual amount of $4,272.12 to be paid up to the anniversary of the date of judgment in year 2048. Then, beginning on the anniversary of the date of judgment in year 2048, an annual amount of $4,352.28 to be paid up to the anniversary of the date of judgment in year 2049. Then, beginning on the anniversary of the date of judgment in year 2049, an annual amount of $4,429.20 to be paid up to the anniversary of the date of judgment in year 2050. Then, beginning on the anniversary of the date of judgment in year 2050, an annual amount of $4,536.12 to be paid up to the anniversary of the date of judgment in year 2051, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

d. For future unreimbursable Medicare Premium and Medicare Supplemental Plan expenses, beginning on the anniversary of the date of judgment in year 2051, an annual amount of $6,476.80 to be paid up to the anniversary of the date of judgment in year 2072. Thereafter, beginning on the anniversary of the date of judgment in year 2072, an annual amount of $3,322.80 to be paid for the remainder of A.C.'s life, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

e. For future unreimbursable Van and Van Modification expenses, on the anniversary of the date of judgment in year 2024, a lump sum of $54,000.00. Then, on the anniversary of the date of judgment in year 2034, a lump sum of $54,000.00. Thereafter, beginning on the anniversary of the date of judgment in year 2035 an annual amount of $5,400.00 to be paid for the remainder of A.C.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

f. For future unreimbursable Backup Wheelchair expenses, on the anniversary of the date of judgment in year 2037, a lump sum of $600.00. Thereafter, beginning on the anniversary of the date of judgment in year 2038 an annual amount of $85.71 to be paid for the remainder of A.C.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

g. For future unreimbursable Respite Care expenses, beginning on the first anniversary of the date of judgment, an annual amount of $6,000.00 to be paid for the remainder of

A.C.'s life, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

h. For future unreimbursable Case Management expenses, beginning on the first anniversary of the date of judgment, an annual amount of $1,200.00 to be paid up to the anniversary of the date of judgment in year 2029, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

i. For future unreimbursable Therapeutic Swim Lesson expenses, beginning on the first anniversary of the date of judgment, an annual amount of $460.00 to be paid up to the anniversary of the date of judgment in year 2025, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

j. For future unreimbursable Housing at KKI, Incontinent Garments, Blood Pressure Cuff, Hand Held Shower, Padded Shower Chair, MiraLax and Nutritional Assessment expenses, on the first anniversary of the date of judgment, a lump sum of $1,797.00. Then, beginning on the anniversary of the date of judgment in year 2017, an annual amount of $562.00 to be paid up to the anniversary of the date of judgment in year 2030. Thereafter, beginning on the anniversary of the date of judgment in year 2030 an annual amount of $524.50 to be paid for the remainder of A.C.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

k. For future unreimbursable Recreational Therapy expenses, beginning on the anniversary of the date of judgment in year 2027, an annual amount of $150.00 to be paid up to the anniversary of the date of judgment in year 2072, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

l. For future unreimbursable Neuropsychology Testing expenses, on the anniversary of the date of judgment in year 2019, a lump sum of $1,800.00. Then, on the anniversary of the date of judgment in year 2024, a lump sum of $1,800.00, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

At the sole discretion of the Secretary of Health and Human Services, the periodic payments may be provided to the petitioners in monthly, quarterly, annual or other installments. The "annual amounts" set forth above describe only the total yearly sum to be paid to the petitioners and do not require that the payment be made in one annual installment. The petitioners will continue to receive the annuity payments from the Life Insurance Company only so long as A.C. is alive at the time that a particular payment is due. Written notice to the Secretary of Health and Human

5

Services, the trustee, and the Life Insurance Company shall be provided within twenty (20) days of A.C.'s death.

11. The annuity contract will be owned solely and exclusively by the Secretary of Health and Human Services and will be purchased as soon as practicable following the entry of a judgment in conformity with this Stipulation. The parties stipulate and agree that the Secretary of Health and Human Services and the United States of America are not responsible for the payment of any sums other than the amounts set forth in paragraph 8 herein and the amounts awarded pursuant to paragraph 12 herein, and that they do not guarantee or insure any of the future annuity payments. Upon the purchase of the annuity contract, the Secretary of Health and Human Services and the United States of America are released from any and all obligations with respect to future annuity payments.

12. As soon as practicable after the entry of judgment on entitlement in this case, and after petitioners have filed both a proper and timely election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), and an application, the parties will submit to further proceedings before the special master to award reasonable attorneys' fees and costs incurred in proceeding upon this petition.

13. Petitioners and their attorney represent that compensation to be provided pursuant to this Stipulation is not for any items or services for which the Program is not primarily liable under 42 U.S.C. § 300aa-15(g), to the extent that payment has been made or can reasonably be expected to be made under any State compensation programs, insurance policies, Federal or State health benefits programs (other than Title XIX of the Social Security Act (42 U.S.C. § 1396 et seq.)), or by entities that provide health services on a pre-paid basis.

14. Payments made pursuant to paragraph 8 and any amounts awarded pursuant to paragraph 12 of this Stipulation will be made in accordance with 42 U.S.C. § 300aa-15(i), subject to the availability of sufficient statutory funds.

15. The parties and their attorneys further agree and stipulate that, except for any award for attorneys' fees and litigation costs, the money provided pursuant to this Stipulation will be used solely for the benefit of A.C. as contemplated by a strict construction of 42 U.S.C. §300aa-15(a) and (d), and subject to the conditions of 42 U.S.C. § 300aa-15(g) and (h).

16. Petitioners represent that they presently are, or within 90 days of the date of judgment will become, duly authorized to serve as guardian(s)/conservator(s) of A.C.'s estate under the laws of the State of Maryland. No payments pursuant to this Stipulation shall be made until petitioners provide the Secretary with documentation establishing their appointment as guardian(s)/ conservator(s) of A.C.'s estate. If petitioners are not authorized by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of A.C. at the time a payment pursuant to this Stipulation is to be made, any such payment shall be paid to the party or parties appointed by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of A.C. upon submission of written documentation of such appointment to the Secretary.

17. In return for the payments described in paragraphs 8 and 12, petitioners, in their individual capacities and as legal representatives of A.C., on behalf of themselves, A.C., and her heirs, executors, administrators, successors or assigns, do forever irrevocably and unconditionally release, acquit and discharge the United States and the Secretary of Health and Human Services from any and all actions or causes of action (including agreements, judgments, claims, damages, loss of services, expenses and all demands of whatever kind or nature) that

have been brought, could have been brought, or could be timely brought in the Court of Federal Claims, under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300 aa-10 et seq., on account of, or in any way growing out of, any and all known or unknown, suspected or unsuspected personal injuries to or death of A.C. resulting from, or alleged to have resulted from, any of the vaccinations administered on July 25, 2008, as alleged by petitioners in a petition for vaccine compensation filed on or about July 22, 2011, in the United States Court of Federal Claims as petition No. 11-477V.

18. If A.C. should die prior to entry of judgment, this agreement shall be voidable upon proper notice to the Court on behalf of either or both of the parties.

19. If the special master fails to issue a decision in complete conformity with the terms of this Stipulation or if the Court of Federal Claims fails to enter judgment in conformity with a decision that is in complete conformity with the terms of this Stipulation, then the parties' settlement and this Stipulation shall be voidable at the sole discretion of either party.

20. This Stipulation expresses a full and complete negotiated settlement of liability and damages claimed under the National Childhood Vaccine Injury Act of 1986, as amended, except as otherwise noted in paragraph 12 above. There is absolutely no agreement on the part of the parties hereto to make any payment or to do any act or thing other than is herein expressly stated and clearly agreed to. The parties further agree and understand that the award described in this Stipulation may reflect a compromise of the parties' respective positions as to liability and/or amount of damages, and further, that a change in the nature of the injury or condition or in the items of compensation sought, is not grounds to modify or revise this agreement.

21. Petitioners hereby authorize respondent to disclose documents filed by petitioners in this case consistent with the Privacy Act and the routine uses described in the National Vaccine Injury Compensation Program System of Records, No. 09-15-0056.

22. This Stipulation shall not be construed as an admission by the United States or the Secretary of Health and Human Services that the DTaP, Hep B, IPV, Hib, or PCV vaccines caused A.C. to suffer transverse myelitis or any other injury or condition.

23. All rights and obligations of petitioners hereunder shall apply equally to petitioners' heirs, executors, administrators, successors, and/or assigns as legal representatives of A.C.

END OF STIPULATION

Respectfully submitted,

**PETITIONER:**

*/s/ Casey Compton/*
CASEY COMPTON

**PETITIONER:**

*/s/ Jeffrey Compton/*
JEFFREY COMPTON

**ATTORNEY OF RECORD FOR PETITIONERS:**

*/s/ Ronald W. Cox, Jr./*
RONALD W. COX, JR.
McCARTHY WILSON, LLP
2200 Research Boulevard, Suite 500
Rockville, MD 20850
(301) 762-7770

**AUTHORIZED REPRSENTATIVE OF THE ATTORNEY GENERAL:**

*/s/ Vincent J. Matanoski/*
VINCENT J. MATANOSKI
Deputy Director
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146

**AUTHORIZED REPRESENTATIVE OF THE SECRETARY OF HEALTH AND HUMAN SERVICES:**

*/s/ A. Melissa Houston/*
A. MELISSA HOUSTON M.D., M.P.H., FAAP
Director, Division of Injury Compensation Programs
Healthcare Systems Bureau
U.S. Department of Health
and Human Services
5600 Fishers Lane
Parklawn Building, Mail Stop 11C-26
Rockville, MD 20857

Dated: October 1, 2015

**ATTORNEY OF RECORD FOR RESPONDENT:**

*/s/ Jennifer L. Reynaud/*
JENNIFER L. REYNAUD
Trial Attorney
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146
Tel: (202) 305-1586